IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| AMANDA MCMILLAN | § | |
| | § | |
| Plaintiff | § | |
| v. | § | |
| | § | |
| SEAFOOD R'EVOLUTION; | § | |
| R'EVOLUTION SEAFOOD AT | § | |
| RENAISSANCE, LLC; | § | |
| R'EVOLUTION SEAFOOD AT | § | |
| RENAISSANCE, LLC, D/B/A | § | |
| SEAFOOD R'EVOLUTION; | § | |
| HOME ON THE RANGE- A | § | |
| RESTAURANT DEVELOPMENT, LLC, | § | |
| D/B/A SEAFOOD R'EVOLUTION; | § | CIVIL ACTION NO. 3:18cv 56 HSO-JCG |
| FOLSE RESTAURANT | § | |
| DEVELOPMENT, LLC, | § | |
| D/B/A/ SEAFOOD R'EVOLUTION; | § | ** |
| REVOLUTION CHICAGO | § | JURY TRIAL REQUESTED |
| INVESTORS, LLC, | § | ** |
| D/B/A/ SEAFOOD R'EVOLUTION; | § | |
| JOHN D. FOLSE | § | |
| D/BA/ SEAFOOD R'EVOLUTION; | § | |
| RICK M. TRAMONTO | § | |
| D/B/A SEAFOOD R'EVOLUTION; | § | |
| WALTER DENNY | § | |
| D/B/A SEAFOOD R'EVOLUTION; | § | |
| JAMES L. BARKSDALE | § | |
| D/B/A SEAFOOD R'EVOLUTION; | § | |
| ANDREW MATTIACE; | § | |
| D/B/A SEAFOOD R'EVOLUTION; | § | |
| AND JOHN DOES 1 THROUGH 70 | § | |
| | § | |
| Defendants | § | |



0

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION
THROUGH UNLAWFUL EMPLOYMENT PRACTICES
IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964
AS AUTHORIZED BY THE
EQUAL OPPORTUNITY EMPLOYMENT COMMISSION
(RIGHT TO SUE GRANTED)**

COMES NOW Amanda McMillan, the Plaintiff, and files this Complaint for damages arising from intentional gender based discriminatory employment practices committed by Seafood R'evolution (hereinafter "Seafood Revolution") and its owners and operators, R'evolution Seafood At Renaissance, LLC, Home On The Range – A restaurant development company, LLC, Folse Restaurant Development, LLC, Chicago Revolution Investors, LLC, John D. Folse, Rick M. Tramonto, Walter Denny, James L. Barksdale, and Andrew Mattiace (hereinafter "Owner-Operators", ) and would most respectfully show unto the Court the following, to wit:

## NAMED PARTIES

1.      Seafood Revolution is a multi-million dollar restaurant located in Ridgeland, Mississippi. Presently, there exists no business registration and/or qualification with the Mississippi Secretary Of State qualifying the entity "Seafood R'evolution" as an entity legally organized to do business in the State Of Mississippi. This includes the non-existence of a fictitious name registration linking the name "Seafood R'evolution" to an entity properly organized to business under Mississippi Law. See Exhibit A. However, it has been made known to Plaintiff that Seafood R'evolution alleges to be doing business as R'evolution Seafood At Renaissance, LLC. Defendants continue to hide behind this convoluted name registration although Defendants have been placed on prior notice that said name registration and designation of registered agent is

1

convoluted and nearly undiscoverable by a public records search within the office of the Mississippi Secretary Of State.

2. Upon information and belief, Plaintiff alleges that Seafood Revolution is owned by a somewhat large group of private investors. Additionally, Seafood Revolution is owned and operated by R'evolution Seafood At Renaissance, LLC, Home On The Range- A Restaurant Development, LLC, Folse Restaurant Development, LLC, Chicago Revolution Investors, LLC, John D. Folse, Rick M. Tramonto, Walter H. Denny, and James L. Barksdale with each party having a substantial ownership interest in Seafood Revolution. Upon further information and belief, T. Andrew Mattiace has exerted dominion and control over the operational activities and premises of the restaurant at times material hereto. For ease of pleading the facts of this Complaint, all Defendants shall hereinafter be collectively referred to as "Seafood Revolution" and the individual persons shall be referred to as "Owner-Operators".

3. John Does 1 through 70 are fictitious parties the identity of which is unknown to Plaintiff. Plaintiff alleges that said unnamed parties possess an ownership interest in Seafood Revolution and are the agents, investors and/or owners of Seafood Revolution who each have a collective substantial ownership interest in Seafood Revolution and/or contributed to the acts complained of herein. Upon commencement of this civil action, Plaintiff will conduct reasonable discovery to learn the name of said unnamed defendants and amend this Complaint accordingly pursuant to the Federal Rules Of Civil Procedure. As such, Plaintiff reserves the right to amend this Complaint pursuant to the Federal Rules Of Civil Procedure upon learning the identity of said unnamed defendants.

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections §§ 703(a) and 706(±)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-5(f)(l) and (3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

5. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Mississippi, North Division.

## NATURE OF THE ACTION

6. This is an action brought pursuant to Title VII of the Civil Rights Act Of 1964 and Title I of the Civil Rights Act Of 1991, to correct unlawful employment practices on the basis of gender, and to provide appropriate legal and equitable relief to Amanda McMillan who was and continues to be injured and damaged by such practices. As alleged in specific detail below, Seafood Revolution and its Owner-Operators engaged in a concerted course of conduct to discriminate against Amanda McMillan as a result of Ms. McMillan's gender, female. Seafood Revolution and its Owner-Operators committed intentional and negligent acts against Amanda McMillan which resulted in Amanda McMillan receiving compensation less than similarly situated male employees. Further, Seafood Revolution and its Owner-Operators denied Amanda McMillan promotion(s) in favor of less qualified male applicants. In summary, Caucasian males of less qualification were given preferential treatment over Amanda McMillan in the form of pay increases, compensation schemes, scheduling and promotions.

7. Plaintiff filed a gender-based discrimination Charge with the Equal Employment Opportunity Commission ("EEOC") alleging that Seafood Revolution and its Owner-Operators committed intentional and negligent discriminatory acts by refusing to promote Amanda McMillan and/or afford Amanda McMillan the same pecuniary opportunities afforded to male captain servers. The EEOC investigated the Charge and determined that Amanda McMillan was discriminated against as a result of being a female. The EEOC further determined that Amanda McMillan was the member of a class of similarly situated female persons who were also damaged. The EEOC determined that said similarly situated persons should receive compensation and the their right to seek said compensation should be tolled under the applicable statute of limitations as said persons are presently "unlocated". See Exhibit B.

8. Amanda McMillan made several attempts to settle this matter as opposed to immediately filing this civil action. However, Defendants refused to extend any offer of settlement. To the contrary, Defendants have informed the general public that they will pay "nothing" to Ms. Amanda McMillan or any other aggrieved person who has suffered damages as a result of the discriminatory employment practices of Seafood Revolution. Despite the EEOC's findings of fact, conclusions of law and award of actual damages to Ms. McMillan, Defendants maintain the position that Seafood Revolution and its Owner-Operators will pay "nothing" for the unlawful acts of discrimination committed against Ms. McMillan. Counsel for Ms. McMillan has made several attempts to facilitate settlement of this matter, however, Seafood Revolution and its Owner-Operators simply will not do good faith with regard to proposed settlement attempts.

9. As a matter of last resort, Amanda McMillan now brings this civil action against Seafood Revolution, its Owner-Operators and any other investor and/or agent that is responsible for the unlawful, gender-based discrimination committed against Amanda McMillan.

## **COUNT ONE – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

10. Amanda McMillan adopts and realleges all facts and allegations contained in paragraphs 1-9.

11. Amanda McMillan is a white female of pure Caucasian descent who is 47 years of age.

12. Prior to becoming employed at Seafood Revolution, the knowledge, skills and abilities of Amanda McMillan included ten years of continuous employment in the food and beverage industry as a fine dining server including the opening of Table 100 (Jackson, Mississippi). Ms. McMillan also served as an account manager for Dixie Tobacco Company.

13. In October, 2014 Amanda McMillan applied for employment with Seafood Revolution and was immediately hired as a Captain-Server pending a review of her resume. Defendant's flaunted the multi-million dollar facility to Ms. McMillan as place of solace and opportunity to grow Ms. McMillan's career. This included promises of promotions and other benefits commonly afforded to persons of equal knowledge, skills and abilities of that of Ms. Amanda McMillan.

14. From the time Ms. McMillan began waiting tables at Seafood Revolution as a captain-server, Seafood Revolution engaged in an intentional course of conduct which was designed to provide preferential treatment toward white males including white males employed as

captain-servers at Seafood Revolution. Specifically, Seafood Revolution permitted the only Caucasian male captain-server, Simon Hall, to selectively choose his server responsibilities and table assignments each shift. This resulted in Simon Hall having the ability to serve the best tables and parties comprised of wealthy guests most of which were subject to a heightened, mandatory gratuity charge paid directly to Simon Hall. The effect of this preferential treatment resulted in the remaining female captain-servers receiving tables of guest who were of a common financial status with a total group attendance below the mandatory gratuity limit. (i.e. tables of five or less guests are not subject to automatic gratuity and may at their discretion leave little to no gratuity "tip"). This preferential treatment shown to white males and Simon Hall resulted in a severe reduction in income for Ms. McMillan and other female servers. This is supported by the cash-out reports attached hereto as Exhibit C. The following is a summary of six of the most glaring instances of the financial gain caused by the preferential treatment shown to white males by Seafood Revolution:

[INTENTIONAL SPACE, SEE NEXT PAGE]

| Date | Compensation of Amanda McMillan | Compensation Of Simon Hall |
|---|---|---|
| January 7, 2015 | Net Sales: $2,422<br>Tips Received:    $318 | Net Sales:  $4,999<br>Tips:  999.80 |
| January 12, 2015 | Net Sales: $1,459<br>Tips Received:    $511 | Net Sales:  $3,806<br>Tips Received: Unknown |
| January 21, 2015 | Net Sales: $2,353<br>Tips Received:    $443 | Net Sales:  $2,950<br>Tips Received:    $640 |
| April 2, 2015 | Net Sales: $1,136<br>Tips Received:    $228 | Net Sales:  $2,673<br>Tips Received: Hidden |
| April 29, 2015 | Net Sales: $1,188<br>Tips Received:    $239 | Net Sales: $2,356<br>Tips Received:    $535 |
| March 19, 2016 | Net Sales: $1,435<br>Tips Received:    $240 | Net Sales: $1,492<br>Tips Received: $562 |
| March 24, 2015 | Net Sales:     $827<br>Tips Received:     $15 | Net Sales: $3,723<br>Tips Received: $ 819 |

**TOTAL NET SALES OF SIMON HALL:**            $21,999
**TOTAL NET SALES OF AMANDA MCMILLAN:**       $10,820
**PREFERENTIAL TREATMENT OF SIMON HALL**      $11,179


**TOTAL TIPS RECEIVED BY SIMON HALL:**        $3,555 **
**TOTAL TIPS RECEIVED AMANDA MCMILLAN:**      $1,994
**PREFERENTIAL TREATMENT OF SIMON HALL:**     $1,561 **


**\*\* DOES NOT INCLUDE A FIGURE FOR THE TIPS EARNED BY SIMON HALL ON JANUARY 12, 2015 AND APRIL 2, 2015. EVEN WITH THESE TOTALS ABSENT, MS. MCMILLAN STILL SUFFERED A LOSS OF INCOME DUE TO SEAFOOD REVOLUTION'S PREFERENTIAL TREATMENT OF WHITE MALES (SIMON HALL).**

7

15. The cash-out report summary above lists only seven glaring occasions in which Simon Hall derived a financial gain as a result of Seafood Revolution's preferential treatment of white male captain-servers. There exist many more cash-out reports which prove that there are many more instances that Ms. McMillan and other female servers were treated differently from male servers. Said cash-out reports are original as produced by Ms. McMillan from the computer of Seafood Revolution. Said reports show that Simon Hall did in fact receive substantial increases in daily income as a result of Seafood Revolution permitting Simon Hall to select the tables and/or guests which Simon Hall wished to serve on that particular shift. Again, Seafood Revolution never extended this opportunity to Ms. McMillan.

16. In addition to the above, Simon Hall received preferential treatment in the form of a promotion with Seafood Revolution failing to consider other female captain-servers for the said promotion. Ms. McMillan was never offered the opportunity to internally interview for the position that Simon Hall was promoted to nor was Ms. McMillan ever placed on notice that the position was available for Ms. McMillan to apply for the promotion. Again, this preferential treatment of Simon Hall resulted in an increased financial gain by Simon Hall as explained below.

17. Amanda McMillan never received reprimand and/or disciplinary action from Seafood Revolution from the time Amanda McMillan was hired, and therefore, there existed no basis for Amanda McMillan not to be promoted, or at least compensated equal to that of Simon Hall and other male captain servers.

18. Simon Hall's promotion is evidenced by Seafood Revolution's Position Statement attached hereto as Exhibit D. Said Position Statement reads that:

> *"Simon Hall devoted time at the restaurant to training new staff. This was not a particularly desirable job since it was subject to the minimum amount of wages (and no tips). The reward, though, for training new staff was assignment to wait on tables that generally resulted in higher tips".*

19. In simple terms, Seafood Revolution treated white male captain-servers (Simon Hall) differently than its female captain-servers by extending to Simon Hall the opportunity to train new staff in exchange for Simon Hall being assigned to tables that were predetermined to result in a greater financial gain for Simon Hall.

20. At all times relevant hereto, Seafood Revolution never engaged in equal employment practices by refusing to extend to Ms. McMillan the same lucrative opportunity extended to white male captain-servers (Simon Hall). At all times relevant hereto, Ms. McMillan alleges that she has always been compensated at the minimum wage owed to gratuitous employees. However, on some occasions, Ms. McMillan received so little gratuitous compensation that Ms. McMillan's compensation would require supplement to that of the hourly state minimum wage. **Ms. McMillan was never extended the opportunity to select higher financial yield tables in exchange for earning the bare minimum wage as defined by State and Federal law. However, white males were never faced with this issue because white males were allowed to cultivate the entire schedule, seating and table assignment of lucrative, large group tables comprised of wealthy restaurant attendees. This was accomplished by the Owner-Operators alerting persons such as Simon Hall that prior reservations had been made by persons of substantial wealth, power, and/or community influence.**

21. When these facts were presented to the EEOC, Seafood Revolution again furnished false information to the EEOC:

> *"gender did not play any part in the selection of Mr. Hall to train new staff. In fact, Aquila (sic) Carter, a female server, also helped train new staff. She, too, received more desirable table assignments."* See Exhibit D.

22. Akila Carter (correct spelling) is a female of African American descent who was employed as a captain-server contemporaneously with Ms. McMillan and Simon Hall. At all times relevant hereto, Ms. Carter never functioned as trainer paid hourly without the possibility of gratuity, nor was Ms. Akila Carter given the opportunity to train new staff members regardless of compensation in exchange for higher financial yield table assignments. At all times relevant hereto, Ms. Akila Carter was never charged with the responsibility of training new staff members nor did Ms. Akila Carter receive treatment equal to that of Simon Hall. See Exhibit E, the Affidavit Of Akila Carter. To the contrary, Ms. Carter was also injured in the exact same manner of that of Amanda McMillan and said injury is the direct result of Seafood Revolution's preferential treatment of white males (Simon Hall).

23. Seafood Revolution and its Owner-Operators continued to engage in an intentional course of conduct designed to discriminate against Amanda McMillan based on her gender and simultaneously cause Amanda McMillan hardship at work. Specifically, Seafood Revolution and its Owner-Operator's intentionally caused Amanda McMillan to remain in such an employment position as to cause Amanda McMillan to earn poverty amounts of take home pay. Defendants knew this was in violation of Federal Law but engaged in this conduct nonetheless.

24. The EEOC investigated the termination of Amanda McMillan and found that:

   (a) [EEOC has] determined the evidence obtained in the investigation established reasonable cause to believe that [Amanda McMillan] was discriminated against by Seafood Revolution in violation of Title VII.

   (b) The documentary and testimonial evidence disclosed that Amanda McMillan was forced to resign from her position due to the discriminatory treatment that she was being subjected to regarding her wages and table assignments. Although aware of the discriminatory treatment [Seafood Revolution] made no efforts to correct the situation. Additionally, the evidence showed that [Amanda McMillan] and a class of other female servers were excluded from the better and higher paying table assignments to said class member's detriment.

25. In addition to finding that Amanda McMillan was the victim of discrimination, the EEOC also made the following determinations and recommended the following settlement:

   (a) Seafood Revolution pay the Amanda McMillan back wages from May 8, 2015 to the present, minus any standard tax deductions.

   (b) Seafood Revolution agree to pay the Amanda McMillan at the rate of $1,850 per month.

   (c) Seafood Revolution pay the Amanda McMillan $50,000 in compensatory damages, including pain and suffering and any out of pocket expenses and reasonable attorney's fees, if applicable.

   (d) Seafood Revolution pay each class member $5,000 to each person identified as a victim of a class of persons injured as a result of the above discriminatory acts.

   (e) The rights of all un-located class members be preserved. And,

11

(f) Seafood Revolution make postings of the finds of the EEOC for a period of three (3) months.

26. The Determination of the EEOC is attached hereto as Exhibit B. Amanda McMillan hereby incorporates and adopts all findings of fact and allegations contained in the Determination of the EEOC and realleges the same in this Complaint by way of reference. The EEOC subsequently issued Ms. McMillan a "Right To Sue Letter". By his certified signature below, counsel for Ms. McMillan certifies that he nor Ms. McMillan received said said Letter To Sue until October 31, 2017.

## JOINT VENTURE

27. Amanda McMillan adopts and realleges all facts and allegations contained in paragraphs 1-26.

28. It is alleged that all corporate entities and individuals named as Defendants in this matter engaged in a joint business venture with the intent to derive a profit from the pooling of assets. It is further alleged that the individual named Defendants had personal knowledge that Defendants' conduct was in direct violation of the laws employment laws of the United States as codified within the Code Of Federal Regulations and the United States Code Annotated thereby exposing Defendants' to punitive damages as enumerated below.

## ACTUAL AND COMPENSATORY DAMAGES

29. Amanda McMillan adopts and realleges all facts and allegations contained in paragraphs 1-28.

30. Amanda McMillan alleges that she has suffered the following actual damages:

a) Amanda McMillan alleges that she has suffered a loss of back pay in the amount of $150,000;

    b) Amanda McMillan alleges that she has suffered a loss of front pay in the amount of $60,000.00.

    c) Amanda McMillan alleges that she was promised promotional opportunities which included health benefits, retirement benefits, vacation pay, and other "fringe benefits", and therefore, Amanda McMillan requests the same.

    d) Amanda McMillan alleges that she is entitled to "compensatory damages" in the amount of $50,000 as defined by 42 U.S.C §1981a(b)(3).

## REQUEST FOR CLASS ACTION AND/OR COMPULSORY JOINDER

31.    Amanda McMillan adopts and realleges all facts and allegations contained in paragraphs 1-30

32.    The Equal Employment Opportunity Commission conducted an investigation of this matter and issued its Determination finding that there exists multiple female victims who were both injured and entitled to compensation. Plaintiff would show that the rights and/or claims of these victims are justiciable. Plaintiff is ethically obligated not to solicit these victims. Plaintiff would request authorization from this Court to place these victims on notice of their rights and inquire if the victims wish to join Plaintiff in this Complaint as "similarly situated persons." Plaintiff would show that the "opt-in" method of civil procedure which pertains to class actions would best serve judicial economy. In the alternative, Plaintiff would request that this Court adopt the EEOC's finding that all "un-located" victims' rights be preserved. This includes the request that the applicable statute of limitations be tolled in such a manner that would preserve the right of these unlocated victims.

33. In such event that that this Court certifies such a class, Plaintiff would request that Amanda McMillan be appointed the lead class member of such persons and Ms. McMillan's counsel be approved to represent the rights of the aggrieved class.

34. In the alternative, Plaintiff would show that said victims are compulsory parties to this action, and therefore, Plaintiff would request that leave of court conduct reasonable discovery of said victims and that said victims be joined as compulsory plaintiffs to this action. Plaintiff would show that an adjudication on the merits would serve to affect the rights of these "un-located" individuals, which is a basis for concern under federal class action law.

35. Failure to join victims will result in substantial injustice due to the very limited statute of limitations which applies to civil actions leading under Title VII of the Civil Rights Act of 1964.

## OTHER DAMAGES AND PUNITIVE DAMAGES

36. Amanda McMillan adopts and realleges all facts and allegations contained in paragraphs 1-35.

37. As alleged above, the acts of Seafood Revolution and its Owner-Operators were unlawful under federal law and constituted intentional violation of Amanda McMillan' rights and privileges under federal law.

38. Upon information and belief, and in combination with the investigatory findings of the EEOC, Seafood Revolution is has engaged in a pattern and practice of committing extreme acts of gender-based discrimination with no regard for federal law and the administrative procedures of the EEOC. This pattern was perpetrated against Amanda McMillan and other females in the past and may continue until present day. Past particular instances include a female

employee attempting suicide and then fleeing the country as a result of the heinous discrimination carried out against said victim by Seafood Revolution and Defendants. Plaintiff would should that punitive damages are in order and should be assessed against Seafood Revolution in the amount of $1,000,000 which purports to be approximately .33% of the initial investment raised by Defendants to begin business operations. This included hiring Amanda McMillan to "open" the restaurant. Amanda McMillan was solicited by wealthy and famous members of the national restaurant community who are nationally recognized as prestigious restaurateurs and/or chefs. Said persons promised Ms. McMillan a premiere facility, a place of solace and a livelihood with an unlimited potential for growth and expansion within the organization. Amanda McMillan would show that Seafood Revolution of Ridgeland, Mississippi is only one facility of many facilities owned by Defendants around the country. The total accumulation of wealth and assets among the entire enterprise purportedly exceeds $75,000,000 and therefore, this request for punitive damages is not excessive in nature.

## ATTORNEY'S FEES AND LITIGATION EXPENSES

39. Amanda McMillan adopts and realleges all facts and allegations contained in paragraphs 1-38.

40. Pursuant to federal law, a Plaintiff adjudicated to be the victim of unlawful gender-based discrimination is entitled to reasonable attorney's fees so long as a request for said attorney's fees is made with clarity. Upon entry of a judgment in favor of Amanda McMillan, Amanda McMillan hereby requests that she be permitted to submit to this Court an itemized billing which sets out with specificity the attorney's fees and expenses incurred by Amanda McMillan.

WHEREFORE, PREMISES CONSIDERED, Amanda McMillan requests that she be awarded actual, compensatory, punitive and other damages in the sum of $1,260,000 together with reasonable attorney's fees, cost and expenses associated with this civil action and the prior EEOC proceedings. Amanda McMillan further request that this Court hold all Defendants jointly and severally liable for any and all relief awarded to Amanda McMillan.

Respectfully Submitted,
Amanda McMillan

By: _____
MATTHEW WADE GILMER, MSB# 104685
ATTORNEY FOR AMANDA MCMILLAN

GILMER LAW FIRM
POST OFFICE BOX 919
MADISON, MISSISSIPPI 39130
601-898-9130
601-898-9785
MWGILMER@GILMERLAWFIRM.COM